Brian T. Dunn, State Bar No. 176502
bdunn@cochranfirm.com
Edward M. Lyman III, State Bar No. 248264
elyman@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Telephone: (323) 435-8205
Facsimiles: (323) 282-5280
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION

| | |
|---|---|
| CASANDRA PASTORA, DECEASED, by and through her Successor in Interest, SAEED TOGHRAIE, individually, | Case No.: 5:21-cv-01410 |
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| v. | 1.  42 U.S.C. §1983—Civil Rights Violations *Inadequate Conditions of Confinement & Denial of Needed Medical Care* |
| COUNTY OF SAN BERNARDINO, a public entity; former SHERIFF-CORONER JOHN MCMAHON, individually and in his official capacity; SHERIFF-CORONER SHANNON D. DICUS, in his individual and official capacities; CAPTAIN VICTOR MORENO, in his individual and official capacities; and DOES 1-10, individually, jointly, and severally, | 2.  42 U.S.C. §1983—Civil Rights Violations *Deprivation of the fundamental right to familial relationships* |
| | 3.  42 U.S.C. §1983—Civil Rights Violations *Illegal Customs, policies, and procedure* |
| | 4.  Cal. Civ. Code §52.1—Civil Rights Act |
| Defendants. | 5.  42 U.S.C. §12132—ADA *Violations of the Americans with Disabilities Act* |
| | 6.  Wrongful Death |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Saeed Toghraie, by and through his counsel, The Cochran Firm California, files this Complaint individually and as successor in interest to his daughter, Casandra Pastora, against the Defendants.

**JURISDICTION AND VENUE**

1.     This is a civil rights wrongful death and survival action arising from Defendants' failure to provide safe conditions of confinement, in denying needed medical care, and committing other wrongful acts resulting in the death of 24-year-old Casandra Pastora, who was severely disabled with schizophrenia when she was arrested and detained by San Bernardino County Sheriff's Department and housed as a pretrial detainee in the West Valley Detention Center ("Jail").

2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367, to hear and decide claims arising under state law.

3.     A substantial part of the events and/or omissions complained of herein occurred in the City of Chino Hills, County of San Bernardino, California, and pursuant to 28 U.S.C. §1391(b)(2) and Central District of California General Order No. 21-01.  This action is properly assigned to the Eastern Division of the United States District Court for the Central District of California.

**THE PARTIES**

4.     Decedent Casandra Pastora's ("Casi") claims are brought through her father, Plaintiff Saeed Toghraie, ("Plaintiff" or "Casi's father") as a successor in interest, pursuant to California Code of Civil Procedure §§377.10 *et seq*. and federal civil rights laws.  Casi had no spouse or children.  A successor in interest declaration executed by Casi's father is attached to this complaint as Exhibit 1.  A true and correct copy of her death certificate is attached as Exhibit 2.  Casi's father brings these claims

pursuant to California Code of Civil Procedure §§377.20 *et seq*. and 377.60 *et seq*., which provide for survival and wrongful death actions.  He also brings claims individually and on behalf of his daughter Casi based on 42 U.S.C. §§1983 and 1988, the United States Constitution, federal and state civil rights law, and California law. Casi's father also brings these claims as a Private Attorney General, to vindicate not only his and his daughter's rights, but others' civil rights of great importance.

5.     Defendant San Bernardino County ("County") is a public entity, duly organized and existing under the laws of the State of California. Under its authority, County operates the San Bernardino County Sheriff's Department ("SBCSD") and the West Valley Detention Center ("Jail") located at 9500 Etiwanda Ave, Rancho Cucamonga, California 91739.   The County has authority to sue and be sued, to purchase and make contracts, to dispose of and resolve legal actions and tort claims, provide for jails and corrections, to operate and be responsible for health facilities, such as its jails through contracts, joint ventures or partnerships, it is charged and is responsible to make payments for goods furnished its departments, to pay salaries to its employees (such as all SBCSD Deputies), and owns, operates, manages, directs, and finances SBCSD, a public department of the County, which employs other Defendants in this action.  SBCSD is responsible for all deputy training, discipline, hiring, firing, maintaining deputy and staff records, and to taking corrective actions as it affects SBCSD and its jails, inmates, pretrial detainees, deputy officers, and staff. Deputies and officers are under the direct authority and control of SBCSD and its Sheriff-Coroner.

6.     Defendant Sheriff-Coroner John McMahon ("Sheriff-Coroner McMahon"), at all times mentioned herein up until about July 16, 2021, was employed by the County as its Sheriff-Coroner, and he was acting within the course and scope of that employment.  In that capacity, Sheriff-Coroner McMahon was a policy making official for the County.  Further, Sheriff-Coroner McMahon was ultimately responsible for the provision of medical and mental health care to inmates

at the Jail, including assessment of inmates for medical emergencies and possible mental health needs, and all County policies, procedures, and training related thereto. He is being sued in his official and individual capacities.

7.    Defendant Sheriff-Coroner Shannon D. Dicus ("Dicus"), at all times mentioned herein, was employed by the County as Undersheriff and elevated to Sheriff-Coroner following Sheriff-Coroner McMahon's resignation on approximately July 16, 2021.  Sheriff-Coroner Dicus was acting within the course and scope of such employment.  In these capacities, Sheriff-Coroner Dicus was a policy making official for the County.  Further, Sheriff-Coroner Dicus was ultimately responsible for the provision of medical and mental health care to inmates at the Jail, including assessment of inmates for medical emergencies and possible mental health needs, and all County policies, procedures, and training related thereto.  He is being sued in his official and individual capacities.

8.    Defendant Captain Victor Moreno ("Captain Moreno"), at all times mentioned herein, up and until approximately May 2021, was employed by the County as a Captain.  Captain Moreno was acting within the course and scope of such employment.  In these capacities, Captain Moreno was a policy making official for the County, responsible for supervising the SBCSD's Corrections Division, including more than 600 employees, including medical professionals.  Further, Defendant Moreno was ultimately responsible for the provision of medical and mental health care to pretrial detainees and inmates at the Jail, including assessment of inmates for medical emergencies and possible mental health needs, and all County policies, procedures, and training related thereto.  He is being sued in his official and individual capacities.

9.    Certain Doe Defendants, at all material times, were employees and agents of Defendant County, who were responsible for assigning Casi to appropriate housing and housing classification, with appropriate observation and care rendered to her, given her risk of self-harm, her risk of suicide-attempt, her pregnancy, her known

medical condition, namely schizophrenia, and the fact that she had stopped taking her medication, and that she was suffering from grave, life-threatening, and acute symptoms and effects of schizophrenia, her medical needs, the information Casi's father had provided to 911 and the arresting deputies, and other indicators. These to-be-identified Doe Defendants were also responsible for Casi—and had state and federal duties to protect Casi—from harm inflicted by other County employees and Jail staff, other inmates, and any the third-parties.  In doing the acts or omissions hereinafter described, certain Doe Defendants acted within the course and scope of their employment with the County and acted under color of state law. The individually named Defendants and certain Doe Defendants were either elected Sheriff-Coroners, Sheirff's Undersheriffs, Assistant Sheriff's, Deputy Chiefs, Captains, Lieutenants, Sergeants, Corporals, Deputies, Correctional Officers, Doctors, Nurses, Social Workers, medical health professionals, medical health providers, and/or civilian employees and/or agents who were responsible for the care, housing, observation, and safety of pretrial detainees and inmates, including Casi, and/or the transfer of Casi to an inpatient facility for inpatient medical and/or psychiatric care.

10.     Certain Doe Defendants, at all material times, were employees and agents of Defendant County; pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, Plaintiff alleges in the alternative that these to-be-identified Doe Defendants caused the death of Casi, and in doing the acts or omissions hereinafter described, these certain Doe Defendants acted within the course and scope of their employment and or contracts with Defendant County, and acted under color of state law.

11.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as Does 1 through 10 are unknown to Plaintiff, who therefore sue said Defendants by said fictitious names. Plaintiff will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained. Plaintiff is informed, believes, and thereon allege that all

Defendants sued herein as Does are in some manner responsible for the acts, omissions, and injuries alleged herein.

12.    Plaintiff alleges, on information and belief, that each of the Defendants sued herein was wrongfully, deliberately indifferently, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff.  Further, one or more Doe Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both individually named and to-be-identified Doe Defendants.

13.    Plaintiff is informed, believes, and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged. At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiffs' constitutional rights and other actionable harm.

14.    The acts and omissions of all Defendants were at all material times pursuant to the actual customs, policies, practices, and/or procedures of County, SBCSD, and/or Jail.

15.    At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

16.    The Defendants named above, and certain Doe Defendants are sued in their individual capacities.

17.    A proper and timely tort claim was presented to County on behalf of

Plaintiffs, pursuant to Government Code § 910 *et seq*., and this action was thereafter timely filed within all applicable statutes of limitation.

18.    This complaint is pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

19.    Casi and her boyfriend fell in love when they were fifteen.  Shortly after her twenty first birthday, Casi was diagnosed with schizophrenia.  She treated her condition with medication.

20.    At the age of 24, while studying in college to become a special education teacher, Casi and her boyfriend were excited to learn that she was pregnant with their first baby.  They had planned to marry.

21.    As expectant parents, they were concerned about the potential risks Casi's medication would have on their baby.  Accordingly, Casi decided to stop her medication.

22.    **March 13, 2021.**  Casi had an episode of psychosis.  Casi's father called 911 for help.  When the Sheriff-Coroner's Deputies arrived, her father explained that Casi had been diagnosed with schizophrenia and stopped taking her medication because she was pregnant.

23.    The Deputies arrested Casi and took her to the West Valley Detention Center—one of the largest jails in the State of California.  The Deputies assured Casi's father that she would be safe at the "detention center."

24.    In the evening, Deputies refused to provide Casi's father with any information about her.

25.    **March 14, 2021.**  A Deputy told Casi's father that his daughter had been stripped naked and put in, what the Deputy described as a "safe room" with a 15 foot-ceiling so that she could not harm herself.  But that Casi had injured her head on a window inside the "safe room" and was taken to Kaiser Permanente Foundation Hospital in Fontana.  The Deputy stated that Casi's baby remained healthy with a

strong heartbeat.  Casi's father was led to believe Casi had been transported back to the Jail.  For the next two days, the Defendants refused to provide Casi's father with any information about his daughter or even her whereabouts.

26.   **March 16, 2021**.  A Detective called and informed Casi's father that she had attempted suicide, lost her baby, and was at Kaiser Permenente Hospital in Fontana.

27.   Casi's father had called the hospital and was transferred to a nurse in the intensive care unit ("ICU"), who informed him that Casi was is in "critical but stable condition."  A doctor interrupted the call.  The nurse told Casi's father that she is not allowed to provide him with any further information.  The nurse told him to call the Jail.  Casi's father was under the impression that his daughter had been returned to the Jail.  Despite Casi's father's requests, the Jail refused to provide him with any information about his daughter.

28.   **March 17, 2021**. In the morning, Casi's father drove to the Jail and spoke with a Deputy working at the front desk.  The Deputy said she had no information about his daughter, nor her condition, nor her current location.  The Deputy said that Casi's information was confidential and "all I can tell you is that she is being taken care of very well by my colleagues."

29.   In the afternoon, another Deputy informed Casi's father that his daughter was still at the hospital and was never taken back to the Jail.  The Deputy said that Casi was on a ventilator.

30.   Over the next four days, the County, the Sheriff's-Coroner, the Jail, and Kaiser Permanente Hospital in Fontana, refused to provide Casi's father with any additional information about his daughter's health, safety, and welfare—or lack thereof.

31.   **March 22, 2021**. Casi's father drove to the hospital again.  He had hoped they would let him in to see his daughter.  This time, something had changed.  The hospital's security directed him in to the ICU.  Casi's father met a nurse in the ICU

1   who said Casi had tried to commit suicide and had widespread brain damage.  A

2   doctor told him that Casi was brain dead.  Casi's father asked if the doctor needed

3   permission to remove Casi from her ventilator.  The doctor told him "no, she's dead."

4       32.    The Defendant County, Sheriff-Coroners, and Jail all had a duty to protect

5   Casi from harming herself, and to provide necessary medical care, and adequate

6   conditions of confinement.  Casi had not been convicted of any crime nor even had a

7   day in court while she was being held as a pretrial detainee in the custody of the

8   Defendants.

9       33.    These are just a few of the things the the San Bernardino County Sheriff's

10  Department's website says about the county jail:

11

12          We believe in maintaining public trust . . .

13          We continuously strive to provide an environment that
14          ensures optimal safety and security of the employees and
            inmates, as well as the surrounding community.
15
            We are very proud of the medical and mental health
16          services we provide.  Medical care is provided to the
            inmate from the time of booking through release.  All
17          inmates are medically screened upon arrival and
18          evaluated for medical and mental health conditions which
            could require continued care and treatment.  Health
19          professionals are on duty 24/7 and provide a full range of
            services including daily physician sick call, medication
20          administration, treatments, dialysis, radiology services,
21          dental care and psychiatric care.  The facility houses the
            inmates with the greatest medical needs and includes two
22          special medical/mental health housing areas staffed
23          around the clock with medical/mental health
            professionals.
24

25      34.    As of today, the Defendants refuse to provide Casi's father with any

26  information concerning her arrest, her detention in jail, her injuries, her medical

27  records, her autopsy, or even a completed death certificate.  This, despite Casi's

28  father's requests for information under California's Privacy Act.  Accordingly, the

Defendant County, its counsel, and Sheriff-Coroner Dicus, continue to break the law in a blatant effort to conceal their illegal conduct that resulted in Casi's preventable and untimely death.

35.    Casi's incomplete death certificate which lists her cause of death as "pending" was executed by San Bernardino County Sheriff's Department's Deputy Coroner, Mark James on April 4, 2021.  To date, Casi's father has never been provided with a complete death certificate for his daughter listing the cause of her death, let alone any information, reports, documents, or medical records concerning the loss of his daughter and expected grandchild.

36.    At all material times, the County of San Bernardino—like most other counties in the State of California—allow their elected Sheriff to also serve as their Coroner.  This presents inherent conflict of interest whenever anyone such as Casi dies at the hands of the Sheriff.  Historically, Sheriffs throughout California, including in San Bernardino County, have been able to withhold and conceal critical information concerning the individuals that they have killed by determining their victims' causes of death.  Accordingly, Sheriffs who play the dual role of Coroner are enabled to improperly influence autopsies conducted by the medical examiners they choose.

37.    In this case, the Defendants are concealing the fact that they had deprived Casi of her civil rights by, among other things, refusing and denying her the right to adequate conditions of confinement and needed medical care.  The Defendants and each of them have blatantly withheld this information, which Casi's father, and the public at large, is entitled to.  The Defendants have ignored Casi's father's requests under California's Privacy Act for writings relating to her arrest, incarceration, and in-custody death—requests that have been blown off by the County's counsel.

38.    In committing the violations of the law as set forth throughout this complaint, the Defendants, including the Sheriff-Coroner, and the County's counsel have placed their own financial and political interests, ahead of the public's interest,

including Casi's and her father's.

39.     According to San Bernardino County's Code of Ethics and Commitment to County Ethics, Section 2, on Responsibilities of Public Office:

> Public officials and employees are agents of the public purpose and serve for the benefit of the public. They shall uphold and adhere to the Constitution of the United States, the Constitution of the State of California, and the Charter of the County of San Bernardino, rules, regulations and policies of the County, and shall carry out impartially the laws of the Nation, State, and County. In their official acts, they shall discharge faithfully their duties, recognizing that the public interest is paramount. All public officials and employees must demonstrate the highest standards of morality and ethics consistent with the requirements of their position and consistent with the law.

40.     Upon taking office, County officials and employees, including the Sheriff-Coroner and his employees, swear under oath, to defend the Constitution of the United States and Constitution of the State of California.

41.     The Defendants, and each of them, failed to abide by generally accepted standards in corrections and correctional healthcare which require that an inmate who is at risk of suicide and housed alone in a segregated cell or solitary confinement must be properly restrained so as not to her injure herself and under constant observation.

42.     Plaintiff is informed and believes and thereon allege that Defendants, and each of them, had actual knowledge that Casi was suffering from serious psychiatric illness, had serious psychiatric needs, and all Defendants were deliberately indifferent to her serious psychiatric needs, and denied her of necessary psychiatric care. All Defendants were deliberately indifferent to Casi's safety and psychiatric needs in their jail placement, monitoring, assessment, custody, and care decisions.  Due to such deliberate indifference, Casi's psychiatric condition deteriorated while she was held in jail, awaiting her arraignment, until ultimately, she ended her own life.

43.     Currently unidentified deputies, jail administrators, mental health personnel, health care providers that contract with the County, and/or law enforcement officers (Does), knew and/or had reason to know that Casi was a mentally ill and emotionally disturbed person, with immediate and serious medical needs, consistently at very high risk of suicide, and yet they failed to respond appropriately or lawfully and failed to provide her with adequate monitoring or request a treatment plan for her. Defendant and Does 1-10 were deliberately indifferent to Casi's immediate and serious medical needs, including mental illness[es] and emotional disturbances. Further, Defendants and Does 1-10 recklessly disregarded Casi's safety by failing to properly and adequately monitor and care for her, and Defendants failed to accommodate her mental illness and disability(ies).

44.     Casi's death was the proximate result of the Defendants' deliberate indifference to her serious medical needs, as set forth above.

45.     Casi's death was also the proximate result of the Defendants' failure to reasonably train and supervise jail deputies and health care personnel tasked with screening, admitting, observing, monitoring, and protecting Casi. These substantial failures reflect all of the Defendants' policies of implicitly or directly ratifying and/or authorizing the Defendants' objectively unreasonable and deliberate indifference to Casi's conditions of confinement and serious medical needs and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline deputy sheriffs and health care personnel employed by County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, Captain Moreno, and Does 1-10, with objectively unreasonable and deliberate indifference to pretrial detainees inmates' serious medical needs.

46.     Casi's death was also the proximate result of Defendants' failure to reasonably staff, train, supervise, and equip their medical, mental healthcare staff, and third-party health care providers with whom they contract, in the proper and reasonable screening, assessment, and care of severely mentally ill, emotionally

Case 5:21-cv-01410-JGB-SP   Document 1   Filed 08/19/21   Page 13 of 30   Page ID #:13

disturbed pretrial detainees; failure to implement and enforce generally accepted, lawful policies and procedures at the jail; objectively unreasonable and deliberate choices to permit and require LVN's to work outside of their legal scope of practice; and objectively unreasonable and deliberate indifference to the serious psychiatric needs of pretrial detainees such as Casi. These substantial failures reflect Defendants' policies implicitly ratifying and/or authorizing the objectively unreasonable conduct and deliberate indifference to serious medical needs by their medical and mental healthcare staff and third-party medical health providers whom they contract with and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline the same.

47.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, oppressive, objectively unreasonable and deliberately indifferent to Casi's and Plaintiffs' rights, done with oppression, actual malice, gross negligence, negligence, and were objectively unreasonable.

48.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, to the extent permitted and pled by the various legal claims set forth below, Casi and her father sustained the following injuries and damages, past and future, among others:

a.  Physical injuries, mental traumas, severe pain, and loss of her unborn baby, all suffered by Casi as a result of Defendants' improper and inadequate confinement, confinement techniques, and deprivation of necessary medical care;

b.  Wrongful death, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

c.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

d.  Casi's hospital and medical expenses, pursuant to Cal. Code of Civ.

13
COMPLAINT FOR DAMAGES

Proc. § 377.20 *et. seq.*;

e. Coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.*20 et. seq.*;

f. Violations of Casi's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 *et. seq.* and federal civil rights law;

g. Casi's loss of life, pursuant to federal civil rights law;

h. Casi's conscious pain and suffering, pursuant to federal civil rights law;

i. Casi's father's loss of his relationship with his daughter and unborn grandchild, and attendant emotional distress, pursuant to federal civil rights laws;

j. Violations of California Public Records Act; and

k. All damages, penalties, and treble damages recoverable under 42 U.S.C. §§ 1983 and 1988, Cal Civil Code §§ 52 and 52.1 *et seq.* and as otherwise allowed under California and United States statutes, codes, and common law.

## FIRST CAUSE OF ACTION
*Violations of 42 U.S.C. § 1983, Deprivation of Pretrial Detainee's Civil Rights,*
*Against McMahon, Discus, and Moreno, in their individual capacities and Does 1-10*

49.    Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

50.    By the actions and omissions described above, Defendants McMahon, Discus, and Moreno, in their individual capacities, and Does 1-10 violated 42 U.S.C. § 1983, depriving Casi, through her father, Plaintiff as her successors in interest herein, of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution: Casi's right to be free from deliberate indifference to her serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

51.     Defendants subjected Casi to their wrongful conduct, depriving her of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Casi and others would be violated by their acts and/or omissions.

52.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Casi, sustained injuries and damages as set forth at ¶48 above.

53.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law.  Plaintiff does not seek punitive damages against Defendants County, Sheriff-Corner McMahon, Sheriff-Coroner Discus, or Captain Moreno in their official capacities.

54.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 Deprivation of the Fundamental Right to Familial Relationships*
*Against McMahon, Discus, and Moreno, in their individual capacities and Does 1-10*

55.     Plaintiffs restate and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

56.     By the actions and omissions described above, Defendants McMahon, Discus, and Moreno, in their individual capacities, and Does 1-10 violated 42 U.S.C. § 1983, depriving Casi and Plaintiff, individually, of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution: Casi's, her father's, and her unborn child's rights to familial association as secured by the First and/or Fourteenth Amendments.

57.     Defendants subjected Casi and her father to their wrongful conduct, depriving Decedent and her father of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Casi, her father, and others would be violated by their acts and/or omissions.

58.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Casi and her father, sustained injuries and damages as set forth at ¶48 above.

59.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law.  Plaintiff does not seek punitive damages against Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Discus, or Captain Moreno in their official capacities.

60.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**THIRD CAUSE OF ACTION**
*42 U.S.C. § 1983 (Monell) for illegal customs, policies, and procedures*
*Against Defendants and Does 1-10*

61.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

62.     Plaintiff alleges, upon information and belief, the unconstitutional actions and/or omissions of the individually named and to-be-identified Defendants, and the personnel acting on behalf of Defendants were pursuant to the following customs, policies, practices and/or procedures of the County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for County, including, but not limited to, the following:

    a.  To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical and psychiatric needs;

    b.  Requiring such pretrial detainees and inmates in crisis to remain untreated in jail instead of providing for their serious medical needs;

    c.  To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

    d.  To allow, encourage, and require Licensed Vocational Nurses,

Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without appropriate supervision, and conduct independent and unsupervised patient assessments;

e. To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical and psychiatric condition, needs, and treatment;

f. To house seriously mentally ill patients at high risk of suicide in solitary confinement in segregated cells, thereby increasing their risk of suicide;

g. To prescribe medication, including psychotropic medication that has suicidal thoughts as a side effect, to patients without ever seeing or evaluating the patient;

h. To continue the deliberately indifferent maltreatment and mistreatment of suicidal patients and failure to supervise health care personnel even after County grand jury investigation, numerous wrongful death lawsuits, class action lawsuits, and settlements arising from similar conduct;

i. To provide no treatment plan or mental health treatment for severely mentally ill inmate-patients;

j. To house mentally ill and emotionally disturbed inmates in solitary confinement in segregated housing with no legally required welfare checks;

k. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed persons or persons in crisis;

l. To cover up violations of constitutional rights by any or all of the following:

    i. By failing to properly investigate and/or evaluate incidents of

violations of rights, including by unconstitutional medical and psychiatric care at the jail;

    ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by jail staff; and

    iii. By allowing, tolerating, and/or encouraging jail staff to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

m. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, sheriff's office personnel, health care personnel and staff at the jail whereby an officer or member of the sheriff's office, does not provide adverse information against a fellow officer or member of the SBCSD; and

n. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (m) above, with deliberate indifference to the rights and safety of Decedent, of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

63. Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, through their employees and agents, and through their policy-making supervisors and remaining Does, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline their personnel, with deliberate indifference to Plaintiffs', Decedent's, and others' constitutional rights, which were thereby violated as described above.

64.     The unconstitutional actions and/or omissions of Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and other County personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for County and SBCSD.

65.     Plaintiffs are informed and believe and thereon allege that the details of these incidents have been revealed to the authorized policymakers within County and SBCSD, and that such policymakers have direct knowledge of the fact that the death of Decedent was the result of deliberate indifference to his serious mental health needs. Notwithstanding this knowledge, the authorized policymakers within the County, SBCSD have approved of the conduct and decisions of the Defendants and Does 1-10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Casi. By so doing, the authorized policymakers within County and SBCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiff is informed and believes, and thereupon allege, that Defendant County and other policy-making officers for County were and are aware of a pattern of misconduct and injury caused by County correctional officers and the Defendants, including its jail medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable officers, employees, and agents and failed to institute new procedures and policy within County.

66.     The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno were a moving force behind and/or a proximate cause of the deprivations of Decedent's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above at

¶48.

67.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent, Plaintiffs and others would be violated by their acts and/or omissions.

68.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and Does 1-10, as described above, Decedent and Plaintiff suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendant County and the WELLPATH DEFENDANTS as set forth above.

**FOURTH CAUSE OF ACTION**
*Violations of the Civil Rights Act, California Civil Code § 52.1*
*Against all Defendants and Does 1-10*

69.   Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

70.   Plaintiff brings the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. Section 377.20 *et. seq*.

71.   By their acts, omissions, customs, and policies, Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and Does 1-10, acting in concert/conspiracy, as described above, while Casi was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiff's and Casi's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

  a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Casi's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth

Amendments to the United States Constitution and by California

Constitution, Article 1, §§ 7 and 13;

b. Casi's, her unborn baby's, and her father's fundamental rights to

familial association as secured by the First and/or Fourteenth

Amendments.

c. The right to enjoy and defend life and liberty; acquire, possess, and

protect property; and pursue and obtain safety, happiness, and privacy,

as secured by the California Constitution, Article 1, § 1;

d. The right to protection from bodily restraint, harm, or personal insult, as

secured by California Civil Code § 43; and

e. The right to emergency medical care as required by California

Government Code §845.6.

72. Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and Does 1-10, violations of Casi's and her father's due process rights with deliberate indifference, in and of themselves constitute violations of the Civil Rights Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Casi's rights as described above, Defendants violated Casi's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to Casi's serious medical needs, suffering,

and risk of grave harm including death, depriving Casi of necessary,

life-saving care for his medical and/or psychiatric needs;

b. Subjecting Casi to ongoing violations of his rights to prompt care for

her serious medical and psychiatric needs over days, causing immense

and needless suffering, physical pain, intimidation, coercion, and

endangering her life and well-being;

c. Requiring psychiatric patients in a high risk of suicide to remain in jail

without adequate supervision, competent mental health treatment,

restraints, or any psychiatric treatment or treatment plan whatsoever, instead of allowing them to receive necessary emergency medical and psychiatric care;

d. Deliberately causing the provision of inadequate and incompetent medical and mental health care to County jail detainees and inmates;

e. Requiring LVN's, psychiatric technicians, and associate social workers to work outside their legal scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Casi, they are not competent to make;

f. Choosing not to provide the required constant observation and restraints for pretrial detainees and inmates at high risk of suicide who are housed in solitary confinement in segregated cells;

g. Housing severely mentally ill inmates, who are receiving no psychiatric care and are at high risk of suicide, in solitary confinement in segregated cells;

h. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Casi would be subjected to self-harm, violence, threat, intimidation, coercion, and ongoing violations of rights as Casi was here; and

i. Refusing to provide Casi's father with public records in violation of California's Public Records act.

73. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Decedent's rights, or to any legitimate and lawful jail or law enforcement activity.

74. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

75.     Further, each Defendant violated Plaintiff's and Casi's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

76.     Defendant County is vicariously liable for the violation of rights by their employees and agents, third-party contractors, including violation of rights Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and Does 1-10, Defendant County is vicariously liable pursuant to California Government Code §815.2.

77.     As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Casi's rights under the United States and California Constitutions, Plaintiff (as successor in interest for Casi) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at ¶48 above, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, treble damages and civil penalties.

### FIFTH CAUSE OF ACTION
*42 U.S.C. 12132 & 29 U.S.C. § 794,*
*Violations of the Americans with Disabilities Act (ADA)*
*Against Defendant County*

78.     Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

79.     At all material times, including, but not limited to prior to—and between—March 13, 2021 and March 22, 2021, Casi was a "qualified individual" with a mental illness and disability and medical impairments that limited and/or substantially limited her ability to care for herself and control her mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, Decedent qualified as an individual with a mental and physical disability under California law and Decedent met the essential eligibility requirements of County

programs to provide access to medical and mental health care services for its detainee/inmate patients in County's jails while they are in custody.

80.     Defendant County's Jail and mental health services are places of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), and the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws. Further, on information and belief, Defendant County and its Jail receives federal assistance and funds.

81.     Defendant County's Jail, as a local government and/or department or agency thereof, falls within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b). Defendant County is also within the mandate of the RA that no person with a disability may be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. §794.

82.     Under the ADA, Defendant County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

83.     Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101 (a)(2).

84.     Defendant County is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

85.     The ADA, 42 U.S.C. §12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through

contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that *is different or separate* from that provided to other individuals." *Id*. (emphasis added).

86.    Defendant County violated the ADA, RA, and discriminated against Casi and Plaintiff, violating their ADA, RA, and state protected rights by: (a) failing to provide services or to accommodate Casi with access to appropriate, competent, and necessary care for her serious medical and psychiatric for persons who qualify for access and services under California Welfare and Institutions Code 5150; (b) failing to provide services or accommodate Casi as indicated and with appropriate classification, housing, restraints and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled and at risk for suicide; (c) failing to provide reasonable accommodations to people in custody with mental disabilities at its jail and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other individuals with the same disabilities; (d) denying Casi, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of County, in violation of 28 C.F.R. § 35.130(b)(1)(i); (e) by reason of Casi's mental disabilities, Defendants did not afford her an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (f) on the basis of Casi's disability, the named Defendants failed to provide Decedent an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); (g) limited Casi, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which Casi was denied, in violation of 28 C.F.R. §35.130(b)(1)(vii).

87.     Casi was denied the benefits of the services, programs, and activities of County, and was denied accommodation for her disabilities, which deprived her of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision. This denial of accommodation, programs, and services was the result of her disability in that she was discriminated against because she was mentally ill, pregnant, at risk for suicide, and gravely disabled, in that she suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for her basic personal needs for food, clothing, or shelter and is unable to advocate for herself; and, Casi had mental impairments that substantially limited one or more of her major life activities.

88.     As a result of the acts and misconduct of Defendant County complained of herein, Casi died, and Plaintiff has suffered, is now suffering, and will continue to suffer damages and injuries as alleged above. Plaintiff has suffered loss of love and society and claim damages for the wrongful death of his daughter Casi and his unborn grandchild, in an amount not yet ascertained, but to be proven. Plaintiff sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA and RA and above, in ¶ 48.

## SIXTH CAUSE OF ACTION
*Wrongful Death Negligence Against all Defendants and Does 1-10*

89.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

90.     At all times, Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and Does 1-10, owed Plaintiff and Casi the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

91.     At all times, these Defendants owed Plaintiff and Casi the duty to act with reasonable care.

92.     These general duties of reasonable care and due care owed to Plaintiff and Casi by these Defendants include but are not limited to the following specific obligations:

a.   To provide safe and appropriate jail custody for Casi, including reasonable classification, monitoring, and housing, including placing her on suicide watch with proper suicide precautions, restraints, and preventing access to physical conditions and items that could foreseeably be used for suicide;

b.   To summon necessary and appropriate medical care for Casi;

c.   To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Casi's status as a pregnant and mentally ill and/or emotionally disturbed person;

d.   To ensure that all employees and third-party contractors are working within their legal scope of practice;

e.   To ensure that pretrial detainee-patients who are pregnant and at risk of suicide receive appropriate mental health care, monitoring, and supervision;

f.   To ensure that all inmates in segregated housing receive appropriate supervision, including constant supervision for inmates who are at risk of suicide;

g.   To ensure that all mentally ill patients receive a treatment plan, appropriate evaluation by a psychiatrist, and continuity of care;

h.   To ensure that inmates at high risk of suicide are not housed alone in solitary confinement, or when housing such inmates alone, to ensure they are appropriately restrained, and placed on constant observation;

i.   To refrain from abusing their authority granted them by law; and

j.   To refrain from violating Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise

protected by law.

93.     Defendants County, Sheriff-Coroner McMahon, Sheriff-Coroner Dicus, and Captain Moreno, and Does 1-10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff and Casi.

94.     Defendant County is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code section 815.2.

95.     As a direct and proximate result of these Defendants' negligence, Plaintiff and Casi sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief as set forth above at ¶48 above, including punitive damages against such individual Defendants.

## RELIEF REQUESTED

WHEREFORE, Plaintiff as successor and interest and individually, respectfully requests the following relief against each and every Defendant herein, jointly and severally:

    a.  Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

    b.  Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

    c.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; 42 U.S.C. § 12132 and 29 U.S.C. § 794, and as otherwise may be allowed by California and/or federal law;

    d.  Declaratory and injunctive relief, including but not limited to the following:

        i.  An order requiring Defendant County to immediately comply

1            with California's Public Records Act;

    ii.   An order requiring Defendants County and current Sheriff-Coroner Dicus to institute and enforce appropriate and lawful training, supervision, policies, and procedures for handling mentally ill and/or emotionally disturbed persons, and/or persons with serious medical and mental health needs at the County Jail;

  iii.   An order requiring Defendants County and current Sheriff-Coroner Dicus to provide pretrial detainees and inmates at the County jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs;

  iv.   An order requiring Defendants County and current Sheriff-Coroner Dicus to provide disabled pretrial detainees and inmates with adequate conditions of confinement;

   v.   An order requiring Defendant County to cease allowing and assigning, medical health workers to work outside their legal scope of practice and without sufficient supervision;

  vi.   An order requiring County to cease and desist from allowing and assigning LVN's, Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without sufficient supervision;

  vii.   An order requiring Defendants County and Sheriff-Coroner Discus to evaluate a patient before prescribing medication for the patient except in cases of emergency;

 viii.   Defendants County and Sheriff-Coroner Discus to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions;

  ix.   Defendants County and Sheriff-Coroner Discus to provide

COMPLAINT FOR DAMAGES

1    constant observation for all suicidal pretrial detainees and
2    inmates housed alone in segregated cells;
3    x.  Defendants County and Sheriff-Coroner Discus from continuing
4    to allow, encourage, and require unlicensed and/or inadequately
5    trained and/or and inadequately supervised medical and mental
6    health staff to make decisions to place jail inmates on, and
7    remove inmates from, suicide watch or the safety cell;
8    xi.  Such further relief, according to proof, that this Court deems
9    appropriate and lawful.

10    **JURY DEMAND**

11    Plaintiff hereby demands a jury trial in this action.

12

13    DATED: August 19, 2021          Respectfully submitted,

14    **THE COCHRAN FIRM CALIFORNIA**

15
16    By: _____
17    EDWARD M. LYMAN III
18    *Attorneys for Plaintiffs*
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES